Blake v. Brown.

AFFIRMED.

BLAKE, Receiver, v. BROWN.

THE SAME v. YERGER.

Promissory Notes: SUBSCRIPTION TO RAILROAD: UNREASONABLE DELAY: FAILURE OF CONSIDERATION. The defendants gave their notes in 1869 for balances of subscriptions made by them to aid in the building of a railway. The work on the road had ceased for want of funds, and the notes were given for the purpose of raising funds for the prosecution of the work, and they were payable when the cars were running between certain named points on the road. The cars were not. so running until more than fourteen years after the notes were given. *Held* that the notes contemplated that the condition of payment should be fulfilled within a reasonable time, and that the consideration had failed, and defendants were not liable thereon.

*Appeal from Keokuk District Court.*—HON. DAVID RYAN, Judge.

FILED, MAY 26, 1890.

ACTIONS at law upon promissory notes. Trial to the court, and judgment for defendants, with findings of facts and of law. Plaintiff appeals. The cases, resting upon substantially the same facts, are submitted together. The following facts are sufficient for a full understanding of the questions presented:

The St. Louis and Cedar Rapids Railroad Company was organized for the construction and operation of a

railway from the Missouri state line northward, *via* Ottumwa and Sigourney, to Cedar Rapids. In 1866, defendant subscribed for eight shares, of one hundred dollars each, of the capital stock, payable in installments of ten per cent. every two months. There were certain conditions that are not material to the present inquiry. The defendant made payments, from time to time, to August 25, 1869, when the balance unpaid was four hundred and thirty-five dollars, for which he executed the note sued upon, and which is as follows:

"SIGOURNEY, IOWA, August 25, 1869.

"For value received I promise to pay to the St. Louis and Cedar Rapids Railway Company or bearer the sum of four hundred and thirty-five dollars, at said county, when the cars are running from Ottumwa to Sigourney, on the line of said railway, with ten per cent. interest after maturity.

"A. G. BROWN."

In 1865 or 1866 a contract was let to Wolf, Carpenter & Co., under which they completed the road to Ottumwa and did a considerable amount of grading between Ottumwa and Sigourney, when they stopped work because of the railway company being out of funds. In the spring of 1870, Wolf, Carpenter & Co. resumed work, and, after having done a large amount of grading, again suspended work for the same cause. Subsequently they obtained judgment against the railroad company for a large sum, and purchased the roadbed and franchises at execution sale on said judgment. Thereafter, the Cedar Rapids and St. Louis Railroad Company was organized as the successor of said St. Louis and Cedar Rapids Railroad Company, for the completion of said road. A contract was made by the new company with John S. Wolf, under which he did a large amount of work, and for which he filed a mechanic's lien. Thereafter John S. Wolf obtained judgment against the new company, and upon execution thereon purchased the entire roadbed from Ottumwa to Sigourney, and all the franchises connected

therewith. In March, 1881, John S. Wolf and wife conveyed to S. S. Merrill, trustee for the Chicago, Milwaukee and St. Paul Railroad Company, and that company completed the road, and commenced running cars from Ottumwa to Sigourney, December 29, 1883. In 1871 or 1872 the directors of the St. Louis and Cedar Rapids Company adopted a resolution assigning and turning over to Wolf, Carpenter & Co. all the notes taken on stock subscriptions and the unpaid subscriptions. The Chicago, Milwaukee and St. Paul Company transferred any interest it had in said notes to John S. Wolf, and he to Wolf, Carpenter & Co.

*E. H. Stiles* and *E. L. Burton*, for appellant.

*Sampson & Brown, Mackey & Fonda*, and *C. D. Wooden*, for appellees.

GIVEN, J.—I. Appellants contend that, after the work was first suspended for want of funds, the defendants and other subscribers for stock, residing in Keokuk county, agreed to waive all claim for stock on account of payments made, or to be made, on their subscriptions, and to execute promissory notes for the balance unpaid, so as to furnish means for the prosecution of the work; that the notes in suit, with many others, were accordingly executed and delivered; and that plaintiffs were thereby induced to resume work, and spent large sums thereon. The defendants say that they made no such agreement. There is testimony tending to show that such a proposition was discussed and generally assented to by the subscribers in Keokuk county, and that releases of all claim for stock were signed in a book used for that purpose. There is nothing to show that defendants ever consented to or signed such a release, except that they were active in procuring subscribers to give their notes,—a fact that does not necessarily indicate such an agreement on their part. The railroad company was without means to prosecute the work. The subscriptions could not be used as notes

could be.   There is nothing in the fact of giving the notes that shows a waiver of the right to stock.

Defendants deny having made such an agreement, and Mr. Adams, who was taking notes, and who filled up these notes and the receipts given therefor, states that no paper was signed relinquishing the right to stock.   The receipt given for the notes as a payment on the subscriptions recites that "said shares reserved and set apart for him or his assigns on the condition of the fulfillment of the terms of subscription."   It was not contemplated at the time these notes were given that the St. Louis and Cedar Rapids Company would fail to complete the road ; indeed, the very object of converting the subscriptions into notes was that it might complete it.   We do not discern any good reason, as matters then stood, for such an agreement as is claimed.   We think the findings of the district court on this issue are fully sustained by the testimony.

II.   That no capital stock has or ever can be furnished to defendants, appears beyond question.   In the view we take of the notes sued upon, it is unnecessary that we consider whether this constitutes a failure of consideration or not.   The notes were given August, 1869, payable "when the cars are running from Ottumwa to Sigourney on the line of said road."   The cars were not running on that line until December 29, 1883,—a period of over fourteen years.   The note, construed in the light of its language and the subject-matter, shows clearly that it was contemplated by the parties that the railroad company would complete the road and have the cars running within a reasonable time.   It surely was not contemplated that it should have all the future in which to comply with this condition.   The district court found that three years was a reasonable time in which to have had the cars running. In view of the condition of the road at the time the notes were given, this was ample time ; but, whether it was or not, it is very clear that fourteen years was far beyond a reasonable time.   Had the notes been made

payable if the railroad company should have the cars running in a reasonable time, it would not be claimed that they could recover after a delay of fourteen years, and yet such was manifestly the meaning and intention of the parties. It follows from these conclusions that the consideration for the notes, whether given for stock or as a bonus for the completion of the road within a reasonable time, has totally failed. As the foregoing conclusions fully dispose of the case, it is unnecessary that we notice other points made in the argument. The judgment of the district court is

AFFIRMED.